LOUISVILLE & NASHVILLE RAILROAD CO. *v.* PETER AND SARAH McKENNA.

1. RAILROADS. *Negligence. Injury to passengers. Code, sec. 1166, sub-sec. 5 and sec. 1167 construed.* The provision of the Code (sec. 1166, sub-sec. 5, and sec. 1167) providing that "when any person, animal, or other obstruction appears upon the road, the alarm whistle shall be sounded, the brakes put down, and every possible means employed to stop the train and prevent an accident," and that "every railroad company that fails to observe these precautions, or cause them to be observed by its agents or servants, shall be responsible for all damages to persons or property occasioned by or resulting from any accident or collision that may occur," apply only to the injury of persons or property while on the road-bed, and has no application to the injury of a passenger caused by an obstruction on the road-bed.

2. SAME. *Same.* In the relation which a railroad company bears to a passenger, the common law furnishes ample provision for any negligence of the company, and the provisions of the Code (sec. 1166, sub-sec. 5, and sec. 1167) have no application.

FROM SHELBY.

Appeal in error from the Circuit Court of Shelby county. C. W. HEISKELL, J.

ESTES & ELLETT for Railroad Company.

W. H. CARROLL for McKenna.

TURNEY, J., delivered the opinion of the court.

At about 5:30 o'clock on the morning of the 12th of November, 1873, a car on plaintiff in error's road was thrown from the track on a trestle near Browns-

ville.　Mrs. McKenna was a passenger, and very seri-ously injured by the accident.　This suit was brought by the husband and wife to recover damages for the injury.

It is now the well-settled law of this State, that "when a railroad company engages in the business of common carriers, they undertake that the road is in good condition for traveling and fit for use, that the engine and carriages are roadworthy and properly constructed and furnished, according to the present state of the art; and if any injury result from the imperfection of the road, the carriages or the engines, the company is liable, unless the imperfection was of a character in no degree attributable to negligence."

That "the company is also bound for a due application on the part of its servants of the necessary attention, art and skill; and if the injury to a passenger might have been avoided by the utmost degree of care and skill on the part of the agents and servants of the company, it is liable."

That "it is the duty of the company to use the best headlight the state of the art affords, and this rule applies to every appointment of the locomotive": 3 King's Dig., 2d ed., p. 1720.

The rule last cited obtains to every appointment of the train and road.　Under it, if accident result from defects in machinery, in the construction of track, bridges, trestles, &c., or if there be a failure to use every possible precaution and employ every possible energy to prevent an accident, the company will be liable.　Therefore, if air-brakes and hand-brakes may

L. & N. R. R. Co. *v.* McKenna.

be used to advantage, or if one will assist the other in checking the speed of a train when necessary to be checked, both must be used, or the company will be responsible in damages for any injury resulting from an accident caused by the running of the train or its being thrown from the track. When it is necessary to check or stop a train, every appliance should be used to that end, and employes in charge should afford to each other every assistance in their power, by communicating notices and commands, by putting on brakes, by using sand-boxes, etc., to increase friction and impede progress. In short, nothing demanded by the artful improvements of the times must be neglected, else a liability will accrue.

In this case it is said the accident was the immediate result of an obstruction on the trestle, which obstruction was a "T" rail lying diagonally across the track about midway of the trestle, with one end under the south rail and the other resting on the top of the north rail, and braced on both sides by cross-ties. It is conceded the alarm whistle was not sounded.

The court charged the jury: "This being so, you will find for the plaintiff, unless you are satisfied from the testimony that it was physically impossible, after applying the air-brakes and reversing the engine, to have blown the alarm whistle before the object was struck."

This charge, as we think, presents the only question to be considered by us. It is the only one for which exception is taken to the action of the circuit judge and the jury. With it out of the way, we

could not reverse the judgment as the case appears in the record.

It is argued for appellees that the charge is correct because it pursues the statute contained in sec. 1166, sub-sec. 5, and sec. 1167 of the Code, viz:— "When any person, animal or other obstruction appears upon the road, the alarm whistle shall be sounded, the brakes put down, and every possible means employed to stop the train and prevent an accident. Every railroad company that fails to observe these precautions, or cause them to be observed by its agents or servants, shall be responsible for all damages to persons or property occasioned by or resulting from any accident or collision that may occur."

This statute is very broad and comprehensive, and if it is intended to be applied to passengers on the train, the judgment must be affirmed.

The heading of the chapter under which we find the sections of the Code referred to, is: "Of certain regulations for the protection of life and property on railroads."

Our first inquiry is, was the statute necessary to the safety or protection of property or persons being moved by or traveling on railroad trains? Has it given to such persons or property a remedy or remedies more extensive and effective than already existed by common law?

If there were not any statute upon the subject, and a person is injured or killed, or his property damaged or destroyed, through the negligence of a railroad company, its agents or employes, for such

wrong and injury there is at common law a complete and adequate remedy. The statute has given this remedy no strength. The rule has always been that common carriers are bound to the utmost care and diligence in the transportation of persons and property, and are responsible in damages for the consequences of the failure of its exercise. No statute has, nor could it have made this obligation more imperative.

Our next inquiry is, was the statute necessary to the protection of persons and property on the track of a railway in front of an approaching train?

The company has obtained its right of way by charter from the State, and is entitled to the exclusive use and occupation of its track and road-bed, and their obstruction by others is a trespass. Without legislation of the character we are considering, the company and its agents would not be bound to that watchfulness and care, imposed by the act, to prevent injury to persons or property trespassing upon the road, and thereby obstructing the exercise of the charter rights of the company, and would be held to a less strict rule of accountability in suits for damages. In case of passengers or property on trains, the common law implies an undertaking on the part of the carriers that its road is in the best order, its engines, trains and machinery perfect and roadworthy, that its operatives are capable, faithful and will use every possible means to prevent an injury to persons or property it carries for hire; while, as to persons or property on its track, it is only bound to ordinary care and diligence, nor is it required to have its machinery,

carriages and road in better than ordinary condition and repair. In our opinion, the statute was passed to remedy these latter defects of the common law. Even under the statute, it has never been contended that anything more shall be done than is directly required by it. There is nothing in the statute involving an inquiry as to the condition of the road, machinery or other appointments, while at common law these, together with the specifications in the statute, are open to investigation when passengers or property on trains are injured, and it cannot be inferred that the Legislature intended an abridgment of common-law rights. We therefore conclude, that, as a sufficient remedy already existed—a remedy more comprehensive than the statutory one—the Legislature merely intended to enlarge rights and remedies in the one case, and to leave them in the other in full play and without contraction.

It may be as necessary to the safety of passengers that the alarm shall be sounded as that any other act shall be done, but this can only be required when it will have a tendency to decrease the danger of an accident. Whether the omission to sound the alarm whistle was want of proper care and skill, and whether its sounding would, under all the circumstances, have been necessary to lessen the chances of mishap, are questions of fact for the jury, and the charge of the circuit judge should have been so qualified.

The judgment is reversed and the cause remanded.

L. & N. R. R. Co. *v.* McKenna.

DEADERICK, C. J., delivered the following dissenting opinion :

I do not concur in the conclusion of a majority of the court, that secs. 1166–7 of the Code do not apply to injuries to persons or property on the train.

Sub-sec. 5 of sec. 1166 imperatively requires that " when any person, animal *or other obstruction* appears upon the road, the alarm whistle shall be sounded, the brakes put down, and every possible means employed to stop the train and prevent an accident."

The next section (1167) provides that failure to observe the foregoing precautions subjects the company to liability for " *all damages to persons or property occasioned by* or resulting from any accident or collision that may occur."

The whistle is required to be blown, &c., when any inanimate *obstruction* appears upon the road. The statute requires that it shall be done,—certainly not for the purpose of removing such obstruction, but it may be the Legislature thought it wise and proper that the passengers should be warned of impending danger. But whatever the motive, the law is so written, and I think the next section, in explicit language, makes the railroad company liable for all damages sustained by persons or property occasioned by or resulting from *any* accident or collision that may occur, upon failure to observe the prescribed precautions. The language is broad and comprehensive. " The company shall be responsible for *all damages* occasioned by or resulting from *any* accident or col-

lision that may occur." The act does not say for any damage to person or property which may be upon the railroad track, &c. But to entitle the party to a recovery, whether the injury is to person or property, if the precautions are neglected, it is sufficient that the injury was "occasioned by or resulted from *any* accident or collision," no matter whether the person or property injured was upon the train or upon the track. The damages are given because the injury results from the accident or collision, and not because the person or property was upon the track when the injury occurred.

I therefore dissent from the opinion of a majority of the court.